UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| DONNA M. STAHL,<br><br>*Plaintiff,*<br>v.<br><br>EXTENET SYSTEMS, INC. AND GUARDIAN LIFE INSURANCE COMPANY OF AMERICA,<br><br>*Defendants.* | CIVIL ACTION NO. _____ |

# COMPLAINT

*Introduction*

1.  Plaintiff brings this lawsuit pursuant to three separate provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"): (a) 29 U.S.C. § 1132(a)(1)(B), which authorizes a plan "participant or beneficiary" to bring a "civil action" to "recover benefits due . . . under the term of [her] plan;" (b) 29 U.S.C. § 1132(a)(2), which authorizes a participant or beneficiary to pursue claims for breach of fiduciary duty; and (c) 29 U.S.C. § 1132(a)(3) (ERISA's so-called "catch-all" provision) for equitable relief from breach of fiduciary duty. 29 U.S.C. § 1132(a)(3) provides that a civil action may be brought -

    "(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

2.  In accord with 29 U.S.C. § 1132(a)(1)(B), Plaintiff seeks to obtain the benefits due arising from Defendants' denial of an optional life insurance benefit purchased by Plaintiff's

husband, Mr. Stahl, prior to his death. As a result of Defendants' denial of benefits, Plaintiff has suffered damages in an amount to be determined.

3. In accord with 29 U.S.C. § 1132(a)(2), Plaintiff seeks to obtain relief for the financial losses incurred as a result of the Defendants' breaches of fiduciary duty.

4. In accord with 29 U.S.C. § 1132(a)(3), Plaintiff seeks to obtain equitable relief for Defendants' breach of fiduciary duties.

*Jurisdiction and Venue*

5. This Court has original jurisdiction over the federal claim described in Paragraph l pursuant to 29 U.S.C. § 1132(e)(1).

6. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) because: (a) each of the Defendants may be found in this district given their actions related to Mr. Stahl's benefits and Plaintiff's claim for benefits; (b) as detailed in this Complaint, the applicable plan is administered, at least in part, in this district; and (c) as detailed in this Complaint, Defendants' breaches of ERISA and wrongful denial of benefits occurred in this district.

7. Personal jurisdiction over the Defendants lies under 29 U.S.C. § 1132(e)(2), which provides that "process may be served in any . . . district where a defendant resides or may be found." Each of the Defendants may be found in New Hampshire, among other potential states for service, given their actions in this state related to the plan, Mr. Stahl's employment and benefits, and their actions related to Plaintiff's claim for benefits.

*Parties*

8. Plaintiff Donna M. Stahl ("Mrs. Stahl") is an individual with a residence in Londonderry, New Hampshire.

9. Mrs. Stahl was the beneficiary of, *inter alia*, an optional life insurance policy purchased by her deceased husband, Gary D. Stahl, through his employer, Defendant ExteNet Systems, Inc. ("ExteNet"). Mr. Stahl was employed by ExteNet in New Hampshire from October 3, 2005, until his death on December 24, 2018.

10. Upon information and belief, Defendant ExteNet is an Illinois based corporation.

11. Upon information and belief, Defendant Guardian Life Insurance Company of America ("Guardian") is a mutual life insurance company with a usual place of business at 7 Hanover Square, New York City, New York.

12. The optional term life insurance plan at issue is an employee welfare benefit plan regulated by ERISA. The insurer in this matter is Defendant Guardian, and the Guardian Plan Number is 00515750 ("the Guardian Plan" or the "Plan"). Upon information and belief, Defendant Guardian acted as a fiduciary and in the role of plan administrator for the Guardian Plan.

13. Upon information and belief, at all times relevant, Defendant ExteNet was the Plan Sponsor and was responsible for the operation of the Guardian Plan. Upon information and belief, Defendant ExteNet acted as a fiduciary and in the role of plan administrator for the Guardian Plan.

14. Upon information and belief, Defendant Guardian is registered to conduct, and does regularly transact and solicit business, in the state of New Hampshire, including but not limited to entering into the contract reflected in the terms of the Guardian Plan.

### *Facts*

15. Mr. Stahl was an employee of ExteNet from October 3, 2005, until his death on December 24, 2018.

16. As of December 31, 2017, Mr. Stahl's benefits through his employer, Defendant ExteNet, included, *inter alia:* (a) group term life insurance policy equivalent to his base salary of $160,000, sponsored by his employer, ExteNet and issued by Guardian; (b) a voluntary accidental death and dismemberment policy with $100,000 of coverage with an effective date of September 1, 2015, and; (c) a supplemental life insurance policy with $100,000 of coverage sponsored by Defendant ExteNet and issued by Defendant Guardian for which Mr. Stahl paid a biweekly premium of $36.50.

17. Over the entirety of 2017, the total of all premiums withheld by Defendant ExteNet from Mr. Stahl's paychecks in connection with his $100,000 of supplemental life insurance was $876.16.

18. During Defendant ExteNet's Employee Open Enrollment for 2018 Benefit Plans, Mr. Stahl elected to purchase an additional $150,000 of supplemental life insurance for a total supplemental life insurance benefit amount of $250,000. *Exhibit A*. This additional $150,000 of supplemental life insurance became effective on January 1, 2018; Mr. Stahl's bi-weekly premium increased accordingly from $36.50 to $91.25.

19. The premium of $91.25 for Mr. Stahl's total supplemental life insurance benefit, *i.e.* $250,000, was deducted by Defendant ExteNet from Mr. Stahl's paycheck on a biweekly basis, commencing with his second paycheck of 2018 dated January 31, 2018.

20. These amounts represented premium payments to Defendant Guardian for Mr. Stahl's $250,000 supplemental life insurance.

21. Over the *entirety* of 2018, the total of all premiums withheld by Defendant ExteNet from Mr. Stahl's paychecks in connection with his $250,000 of supplemental life insurance was $2,098.75. *Exhibit B*.

22. On or about December 28, 2017, Ms. Johanna Roback, Human Resources Manager at ExteNet, emailed Ms. Isabel M. Godinez-Huff, Guardian Life Insurance Account Manager, stating that ExteNet was planning to inform all ExteNet employees who made new elections for 2018 during Open Enrollment, such as Mr. Stahl, that "they need to submit [Evidence of Insurability]("EOI").

23. On or about December 29, 2017, Ms. Godinez-Huff emailed Ms. Roback, stating that "I would also make sure they complete their EOIs and are dated prior to their effective date."

24. On or about the beginning of January 2018, Ms. Roback emailed Ms. Godinez-Huff, inquiring whether there was an "ETA for the report we discussed which will note which employees and dependents must complete EOI.  We're starting payroll process today and it would be great to have this information from Guardian as soon as possible."

25. On January 8, 2018, Ms. Godinez-Huff emailed Ms. Roback, with "ExteNet – 2018 Supplemental Life/AD&D Elections and Changes 515750" noted in the subject line.  Ms. Godinez-Huff stated that she "just wanted to provide an update . . . Once all is processed, what we can do is request an EOA report, which will show all EOIs received.  It will include Approvals, EOIs Denied, Closed and in Progress . . . our Escalation team . . . will provide a list of all EE and or dependents that will need to provide EOI for the additional amounts."

26. Later on that same day, Ms. Godinez-Huff subsequently emailed Ms. Roback, noting that she was sending a spreadsheet as an attachment to the email.  The attachment was entitled "515750 Changes Only 2018 Supp Life ADD Elections."

27. At no time subsequent to Mr. Stahl's election of additional $150,000 of supplemental life insurance during Open Enrollment for 2018 did Defendant ExteNet request that Mr. Stahl produce evidence of insurability related to the additional $150,000 of

supplemental life insurance.

28. At no time subsequent to Mr. Stahl's election of additional $150,000 of supplemental life insurance during Open Enrollment for 2018 did Defendant Guardian request that Mr. Stahl produce evidence of insurability related to the additional $150,000 of supplemental life insurance.

29. At no time subsequent to Mr. Stahl's election of additional $150,000 of supplemental life insurance did Defendant ExteNet inform Mr. Stahl that such life insurance was not effective.

30. At no time subsequent to Mr. Stahl's election of additional $150,000 of supplemental life insurance did Defendant Guardian inform Mr. Stahl that such life insurance was not effective.

31. Subsequent to Mr. Stahl's December 24, 2018, death, on January 24, 2019, Ms. Roback completed and submitted to Guardian a Group Life Claim Form. *Exhibit C.*

32. Ms. Roback provided on the Claim Form that, on behalf of Plaintiff, Mr. Stahl's wife and beneficiary, $161,000 of basic life insurance as well as $250,000 of "voluntary" life insurance was being claimed.

33. Furthermore, on the Claim Form, Ms. Roback noted that the effective date of the insurance was September 1, 2015, and also noted that Mr. Stahl's group life premiums were paid through December 31, 2018.

34. The Claim Form included a Beneficiary Designation Form on which it was noted that Plaintiff was Mr. Stahl's beneficiary.

35. By denial letter dated March 7, 2019, Defendant Guardian informed Plaintiff that $150,000 of the supplemental life insurance benefit that Mr. Stahl believed was effective as of

January 1, 2018, was unavailable for payout. *Exhibit D*.

36. Mr. Stahl paid the requisite premium for such $150,000 of supplemental life insurance throughout the entirety of 2018. *Exhibit B*.

37. Defendant Guardian further stated in its March 7, 2019, denial of benefits letter that,"[u]nder the terms of the Guardian plan, proof of insurability requirements apply to the optional term life insurance.

38. In addition, Defendant Guardian stated in its March 7, 2019, denial letter that, on January 8, 2018, Guardian "advised *proof of insurability* was required for Mr. Stahl, however, since we did not receive a response, the additional amount of coverage elected did not become effective."

39. Defendant Guardian also advised in its March 7, 2019, letter that, because Guardian did not receive a response to its January 8, 2018, letter requesting proof of insurability regarding Mr. Stahl, the additional $150,000 of term life insurance elected by Mr. Stahl never became effective and, therefore, was not payable to Plaintiff.

40. Guardian's January 8, 2018, request for evidence of insurability documentation was directed to Mr. Stahl's employer, ExteNet.

41. Therefore, according to Guardian's March 7, 2019, letter to Plaintiff, the $150,000 optional term life insurance was not paid to Plaintiff due to the acts, errors and omissions of ExteNet.

42. By letter dated May 3, 2019, Plaintiff submitted to Guardian's Appeals Committee a formal request for re-consideration of Guardian's March 7, 2019, benefits denial letter.

43. By letter dated July 5, 2019, Guardian denied Plaintiff's request for re-

consideration of its March 7, 2019, benefits denial letter. *Exhibit E.*

44. At all times prior to his death, Mr. Stahl consistently and regularly paid his monthly premiums related to the $250,000 supplemental life insurance policy, including the $150,000 optional insurance which was effective as of January 1, 2018, in exchange for receipt by Mr. Stahl of continued life insurance under the Guardian Plan.

45. At all times prior to Mr. Stahl's death, Defendant Guardian continued to accept Mr. Stahl's monthly life insurance premium payments.

46. Defendant Guardian refuses to pay $150,000 of supplemental life insurance benefits under the Guardian Plan on the grounds that Mr. Stahl failed to submit evidence of insurability.

47. Plaintiff has exhausted her administrative remedies under the Plan.

## COUNT I

### Breach of Fiduciary Duty under 29 U.S.C. § 1132(a)(2) By Defendant ExteNet

48. Plaintiff hereby restates and re-alleges all paragraphs set forth above as if expressly set forth herein.

49. Plaintiff's deceased husband, Mr. Stahl, participated in Defendant ExteNet's Employee Benefit Plan ("Plan") administered by Defendant ExteNet and Defendant Guardian.

50. The Plan meets the definition of an "employee welfare benefit plan" as defined under 29 U.S.C. §§ 1102(a)(2) and 1002(21)(A).

51. Defendant ExteNet was the designated Plan Sponsor and acted as both a plan administrator and a fiduciary. Mr. Stahl named Plaintiff his beneficiary under the life insurance policy at issue in this matter.

52. Defendant ExteNet was acting as a fiduciary of the Plan, as defined by ERISA,

while processing applications for benefits, setting up payroll deductions, paying premiums to Guardian, and processing group insurance premium invoices.

53. Defendant ExteNet was acting as a fiduciary of the Plan when it approved Mr. Stahl's election of $150,000 of supplemental life insurance during Defendant ExteNet's open enrollment for 2018 *and* withdrew premiums from Mr. Stahl's salary for such insurance over the course of one year.

54. As a fiduciary, and pursuant to 29 U.S.C. § 1104(a)(1)(B), Defendant ExteNet was required to discharge its duties "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a similar character and with like aims."

55. Defendant ExteNet owed fiduciary duties to Mr. Stahl as a Plan participant, and to Mrs. Stahl as a Plan beneficiary. These duties included enrolling Mr. Stahl in the Plan, submitting materials to Guardian for eligibility determinations, communicating with Mr. Stahl regarding the status of his enrollment as well as accurately and properly handling any issues related to evidence of insurability.

56. In accord with the provisions of 29 U.S.C. § 1103(a)(1)(B), Defendant ExteNet owed a fiduciary duty to Mr. Stahl and Plaintiff when performing its participant-enrollment function.

57. Defendant ExteNet failed to obtain evidence of insurability from Mr. Stahl even though it knew that such evidence was allegedly required as part of Mr. Stahl's enrollment application for the $150,000 of supplemental life insurance benefit.

58. Defendant ExteNet encouraged Mr. Stahl to believe that his enrollment for $150,000 of supplemental life insurance benefits took effect under the Plan, including arranging

for payroll deductions for relevant premiums owed, when, according to Defendant Guardian's denial of payment of that benefit, Defendant ExteNet allegedly did not conclude all acts necessary for those benefits to take effect.

59. Defendant ExteNet breached its fiduciary duties when it allowed Mr. Stahl to enroll in Guardian's Supplemental Life Insurance Plan and to rely on ExteNet's representations that he was eligible for, and covered under, the Plan, without concluding all steps that Defendant Guardian asserts were required.

60. Defendant ExteNet breached its fiduciary duties when it deducted premiums from Mr. Stahl's salary to pay for the supplemental life insurance benefit if, as asserted by Defendant Guardian, such life insurance benefit was not in force.

61. As a result of Defendant ExteNet's breach of fiduciary duties, Plaintiff has suffered damages in the amount of the policy, lost earnings and interest on that amount, attorney's fees and any other losses, harms or damages.

## COUNT II

### Breach of Fiduciary Duty under 29 U.S.C. § 1132(a)(2) By Defendant Guardian

62. Plaintiff hereby restates and re-alleges all paragraphs above as if expressly set forth herein.

63. Plaintiff's deceased husband, Mr. Stahl, participated in an Employee Benefit Plan ("Plan") administered by Guardian.

64. The Plan meets the definition of an "employee welfare benefit plan" as defined under 29 U.S.C. §§ 1102(a)(2) and 1002(21)(A).

65. Defendant Guardian acted as both a plan administrator and a fiduciary.

66. Mr. Stahl named Plaintiff his beneficiary under the supplemental life insurance

policy at issue in this matter.

67. Defendant Guardian was acting as a fiduciary of the Plan, as defined by 29 U.S.C. § 1102(a)(2) and/or 1002(21)(A), while accepting Mr. Stahl's applications for life insurance benefits, receiving and considering Mr. Stahl's application for such benefits, processing such application, deciding and denying Plaintiff's claim for benefits, and ostensibly approving such application from Mr. Stahl.

68. As a fiduciary, and pursuant to 29 U.S.C. § 1104(a)(1)(B), Defendant Guardian was required to discharge its duties "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a similar character and with like aims."

69. In accord with the provisions of 29 U.S.C. § 1103(a)(1)(B), Defendant Guardian owed a fiduciary duty to Mr. Stahl, as Plan participant, and to Plaintiff, as Plan beneficiary, to perform its participant-enrollment function and its other roles with regard to the insurance benefits and the claim for payment of said benefits.

70. Defendant Guardian breached its fiduciary duties to Mr. Stahl, as Plan participant, and to Plaintiff, as Plan beneficiary, through the conduct described herein, including, but not limited to, failing to obtain evidence of insurability from Mr. Stahl and encouraging both Mr. Stahl and Plaintiff to believe that Mr. Stahl's enrollment for $150,000 of supplemental life insurance benefits took effect under the Plan, including accepting premiums for coverage for Mr. Stahl until his death.

71. As a result of Defendant Guardian's breach of its fiduciary duties, as described herein, Plaintiff has suffered damages in the amount of the policy, lost earnings and interest on that amount, attorney's fees and any other resulting losses, harms or damages.

## COUNT III

**Claim for Denial of Benefits, to Enforce Rights and Clarify Rights Under ERISA §1132(a)(2)(B) Against Defendant ExteNet**

72. Plaintiff incorporates and re-alleges the foregoing paragraphs by reference as though fully set forth herein.

73. Plaintiff brings this Count pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(2), which allows a beneficiary to bring claims to recover benefits due under a plan, to enforce her rights under the terms of the plan, or to "clarify his [or her] rights to future benefits under the terms of the plan."

74. Plaintiff and Mr. Stahl completed all steps and actions required of them in order to receive the supplemental insurance benefit and to obtain payment of said benefit, but Defendants have denied Plaintiff's claim for those benefits.

75. Defendant ExteNet, as a plan sponsor and plan administrator, is liable for payment of those benefits.

76. Plaintiff is entitled to an order overturning the denial of her claim for those benefits and ordering that Defendant ExteNet pay the amount of those benefits to Plaintiff, along with interest, attorney's fees and any other related damages.

## COUNT IV

**Claim for Denial of Benefits, to Enforce Rights and Clarify Rights Under ERISA §1132(a)(2)(B) Against Defendant Guardian**

77. Plaintiff incorporates and re-alleges the foregoing paragraphs by reference as though fully set forth herein.

78. Plaintiff brings this Count pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(2), which allows a beneficiary to bring claims to recover benefits due under a plan, to enforce her rights under the terms of the plan, or to "clarify his [or her] rights to future benefits under the terms of the plan."

79. Plaintiff and Mr. Stahl completed all steps and actions required of them in order to receive the supplemental insurance benefit and to obtain payment of said benefit, but Defendants have denied Plaintiff's claim for those benefits.

80. Defendant Guardian, as plan administrator and insurer of the benefits at issue, is liable for payment of those benefits.

81. Plaintiff is entitled to an order overturning the denial of her claim for those benefits and ordering that Defendant Guardian pay the amount of those benefits to Plaintiff, along with interest, attorney's fees and any other related damages.

## COUNT V

**Claim for Equitable Relief pursuant to 29 U.S.C. § 1132(a)(3) Against Defendant ExteNet**

82. Plaintiffs incorporate and re-allege the foregoing paragraphs by reference as though fully set forth herein.

83. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that "A civil action may be brought . . . by a . . . participant [or] beneficiary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

84. Defendant ExteNet owed fiduciary duties to Mr. Stahl, as Plan participant, and to Plaintiff, as Plan beneficiary.

85. Defendant ExteNet breached its fiduciary duties to Mr. Stahl, as Plan participant, and to Plaintiff, as Plan beneficiary, through the conduct described herein, including, but not limited to, failing to obtain evidence of insurability from Mr. Stahl and encouraging both Mr. Stahl and Plaintiff to believe its representations that Mr. Stahl's enrollment for $150,000 of supplemental life insurance benefits took effect under the Plan.

86. Due to Mr. Stahl's reliance on Defendant ExteNet's false representations that he had successfully procured $150,000 of supplemental life insurance coverage, effective January 1, 2018, Mr. Stahl did not purchase supplemental life insurance coverage from another insurer.

87. As a result of Defendant ExteNet's breach of fiduciary duties, Plaintiff has suffered damages in an amount equal to the benefits she otherwise would have received under the Plan, or she would have received under a different supplemental life insurance policy if Mr. Stahl had purchased such a policy.

88. Defendant ExteNet's breach of its fiduciary duties caused actual harm, injury and loss to Plaintiff, and such harm cannot be remedied absent equitable or remedial relief, as the Court may deem necessary.

89. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Defendant ExteNet is estopped from refusing to recognize, and not approving, Mr. Stahl's election of the supplemental insurance benefits at issue and Plaintiff's claim for those benefits.

90. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Defendant ExteNet must disgorge, or be surcharged, for the value of the benefit wrongfully retained by Defendants.

## COUNT VI

**Claim for Equitable Relief pursuant to 29 U.S.C. § 1132(a)(3) Against Defendant Guardian**

91. Plaintiffs incorporate and re-allege the foregoing paragraphs by reference as though fully set forth herein.

92. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that "A civil action may be brought . . . by a . . . participant [or] beneficiary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

93. Defendant Guardian owed fiduciary duties to Mr. Stahl, as Plan participant, and to Plaintiff, as Plan beneficiary.

94. Defendant Guardian breached its fiduciary duties to Mr. Stahl, as Plan participant, and to Plaintiff, as Plan beneficiary, through the conduct described herein, including, but not limited to, failing to obtain evidence of insurability from Mr. Stahl and encouraging both Mr. Stahl and Plaintiff to believe its representations that Mr. Stahl's enrollment for $150,000 of supplemental life insurance benefits took effect under the Plan, including accepting premiums for coverage for Mr. Stahl until his death.

95. Due to Mr. Stahl's reliance on Defendant Guardian's false representations that he had successfully procured $150,000 of supplemental life insurance coverage, effective January 1, 2018, Mr. Stahl did not elect to purchase supplemental life insurance coverage from another insurer.

96. As a result of Defendant Guardian's breach of fiduciary duties, Plaintiff has suffered damages in an amount equal to the benefits she otherwise would have received under

the Plan, or she would have received under a different supplemental life insurance policy if Mr. Stahl had been given the opportunity to purchase such a policy.

97. Defendant Guardian's breach of its fiduciary duties caused actual harm, injury and loss to Plaintiff, and such harm cannot be remedied absent equitable or remedial relief, as the Court may deem necessary.

98. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Defendant Guardian is estopped from refusing to recognize, and not approving, Mr. Stahl's election of the supplemental insurance benefits at issue and Plaintiff's claim for those benefits

99. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Defendant Guardian must disgorge, or be surcharged, for the value of the benefit wrongfully retained by Defendants.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully demands that judgment enter in favor of Plaintiff against Defendants, plus interest, reasonable attorneys' fees, court costs, and such other equitable or remedial relief as the Court may deem appropriate under the circumstances.

Respectfully submitted,

**Donna M. Stahl**

By her attorneys,

/s/ *Russell F. Hilliard*
Russell F. Hilliard; NHBA #1159
**Upton & Hatfield, LLP**
159 Middle Street
Portsmouth, New Hampshire 03801
Tel: (603) 436-7046
Fax: (603) 369-4645
Email: rhilliard@uptonhatfield.com

**Date: May 8, 2020**

                                              Stephen D. Rosenberg
                                              [*pro hac vice* admission pending]
                                              Caroline M. Fiore
                                              [*pro hac vice* admission pending]
                                              **The Wagner Law Group, P.C.**
                                              99 Summer Street, 13th Floor
                                              Boston, Massachusetts  02110
                                              Tel:  (617) 357-5200
                                              Fax: (617) 357-5250
                                              Email: srosenberg@wagnerlawgroup.com
                                              Email: cfiore@wagnerlawgroup.com